**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4161-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

BRITTANY N. BYER,

      Defendant-Appellant.

_____

Argued August 27, 2019 – Decided September 4, 2019

Before Judges Gilson and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 16-08-0658.

Evan M. Levow argued the cause for appellant (Levow DWI Law, PC, attorneys; Evan M. Levow, of counsel and on the brief; Sandra Leigh Battista, on the brief).

Andre R. Araujo, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Andre R. Araujo, of counsel and on the brief).

PER CURIAM

Defendant Brittany Byer appeals from a March 27, 2017 decision denying her motion to suppress her statements to police, as well as urine and blood draw evidence, following a fatal car crash. We affirm for the reasons expressed in the thorough and well-written opinion of Judge Cristen P. D'Arrigo.

We summarize the facts from testimony adduced during a two-day hearing conducted by the judge. They are set forth in detail in his twenty-two page decision.

In December 2015, defendant was involved in a serious auto accident. Defendant was conscious and transported to the hospital because she had pain in her foot. The driver of the other vehicle was unconscious, suffered grave injuries, and later died.

Officers Frederick DeMary and Anne Marie McCormick were assigned to investigate. According to her testimony, McCormick responded to the hospital where defendant was taken to obtain blood and urine samples. Neither McCormick nor defendant were aware the other driver would expire. McCormick encountered defendant lying in a hospital bed, alert and unrestrained.

2

Defendant orally acknowledged and then signed a card confirming McCormick had recited her <u>Miranda</u>[1] rights. Defendant also signed a consent form for a blood and urine draw, which McCormick had also read to her. McCormick testified that defendant was unable to urinate, and, rather than wait, defendant requested a catheter in order to provide a sample. After obtaining the samples, McCormick then left the hospital, again leaving defendant unrestrained and free to depart the hospital. McCormick informed DeMary defendant had signed the <u>Miranda</u> card and the consent form for the samples.

While on route to the hospital to interview defendant, DeMary learned the other driver had died. DeMary recorded the interview with defendant less than two hours after she had been Mirandized. Defendant claimed her vehicle had slipped on black ice, causing the accident. According to the judge's decision, "DeMary stated that she had slow and slurred speech and made comments unrelated to the accident. When asked whether she had consumed any alcohol, she became upset and hostile." Defendant was permitted to return home and was not arrested or charged until the toxicology reports were returned.

Defendant also testified at the hearing. Judge D'Arrigo found her testimony "less than credible," noting she had "selective memory of the events"

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

A-4161-17T4

and "was particularly evasive on the issue of the urine draw." Specifically, "[s]he recalled events before and after the consents were signed and samples were collected, yet does not recall being administered her rights, waiving her rights, or even giving samples."

Citing the relevant case law, Judge D'Arrigo found defendant had not been in custody while she was in the hospital and was free to leave. More importantly, the judge noted "even if [d]efendant was in custody at the hospital[,] [d]efendant was read her Miranda rights and knowingly and voluntarily waived those rights." The judge concluded the signature on the Miranda form belonged to defendant, and defendant never

> indicate[d] that she did not understand what . . . McCormick was saying with respect to her Miranda rights[, and] gave no indication that she wished to remain silent or speak with an attorney. . . . She was able to relay details of the accident providing further evidence of her ability to voluntarily and knowingly waive her rights.

The judge explained the circumstances did not warrant that defendant be re-Mirandized by DeMary because "there were no intervening events that would dilute the effectiveness of the waiver." Indeed, defendant had not left the hospital between McCormick and DeMary's arrival and, at best, there was only

a ninety-minute interval between the issuance of the <u>Miranda</u> warning and the recorded interview.

The judge also found defendant had consented to the blood and urine draw. He concluded "[s]he understood what was happening and the nature of the officer's request." This appeal followed.

> POINT I – BECAUSE A WARRANT WAS NOT OBTAINED TO COLLECT BLOOD AND URINE SAMPLES FROM APPELLANT, THE TEST RESULTS SHOULD HAVE BEEN SUPPRESSED.
>
> POINT II – APPELLANT DID NOT GIVE KNOWING AND VOLUNTARY CONSENT TO PROVIDE BLOOD AND URINE SAMPLES, THEREFORE, ALL RESULTS SHOULD HAVE BEEN SUPPRESSED.
>
> POINT III – APPELLANT'S STATEMENTS TO POLICE SHOULD HAVE BEEN SUPPRESSED BECAUSE APPELLANT DID NOT KNOWINGLY AND VOLUNTARILY WAIVE HER <u>MIRANDA</u> RIGHTS.

I.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." <u>State v. Rockford</u>, 213 N.J. 424, 440 (2013) (alteration in original) (quoting <u>State v. Robinson</u>, 200 N.J. 1, 15 (2009)). "Those findings warrant particular deference when they are

A-4161-17T4

'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). "Therefore, a trial court's legal conclusions are reviewed de novo." Ibid.

In light of our standard of review, we conclude defendant's arguments on appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Our review of the record demonstrates no basis to second-guess Judge D'Arrigo's detailed findings of facts and conclusions of law that defendant was not in police custody, had been properly Mirandized and waived those rights, and voluntarily consented to the blood and urine draw.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

6                                                                                    A-4161-17T4